**Eugenia PANKIW**

v.

**POLISH NATIONAL CATHOLIC CHURCH OF OUR SAVIOR.**

**No. 83–74–Appeal.**

Supreme Court of Rhode Island.

June 5, 1985.

Aram Schefrin, Lovett Morgera Schefrin & Gallogly, Ltd., Providence, for plaintiff.

John W. Kershaw, Rice Dolan & Kershaw, Providence, for defendant.

OPINION

KELLEHER, Justice.

This is a Superior Court civil action in which the plaintiff, Eugenia Pankiw (Eugenia), sought to recover damages from the Polish National Catholic Church of Our Savior (the church) for injuries she received when she fell down a church stairway. A jury trial was terminated when, at the conclusion of the presentation of evidence to support Eugenia's claim, the trial justice granted the church's motion for a directed verdict.

Eugenia, a native of Poland, came to the United States in 1961. She lives in Woonsocket, and at the time of trial in 1982 she was fifty-seven years old. On Sunday, May 9, 1976, Mother's Day, Eugenia had been a member of the church for approximately eighteen years. The church, which is located in Woonsocket, was designed in 1962, built sometime thereafter, and dedicated in 1965. One of the exhibits in evi-

dence is a change order modifying the original specifications for the church by authorizing the installation of the terrazzo on the stairway. The order was executed in early December 1964 and bears the signatures of the prime contractor, the architect, and a representative of the church.

On Mother's Day 1976 Eugenia arrived at the church at about 9:45 a.m. to attend the ten o'clock service. With a bit of time on her hands, she decided to go to the church's offices, which are located in the basement, to pay her parish dues. To accomplish this goal, she went to the stairway that connected the first floor with the basement.

The stairway consists of three flights of stairs and two landings with a metal handrail running along the entire length of the right side of the staircase. The first flight is made up of six steps that terminate at a landing; the second flight consists of three steps that lead to the second landing; and the third flight consists of three steps that end at the basement. The staircase itself was described as a "pan" structure: it is made of fabricated steel containing several pans, twelve little ones and two large ones. With this kind of structure the staircase is first anchored in place, apparently with much of the anchorage built into a wall that surrounds the entire left side of the staircase. Once the anchorage is completed, a subcontractor then fills each one of the pans with a mixture consisting of cement and marble chips. The small pans, of course, enclose the stair treads, and the large pans make up the landings. The mixture used is better known in the trade as terrazzo.

In describing the manner in which she made her way down to the church office on Mother's Day, Eugenia told the jury that she walked on the right side of the stairway, holding onto the railing. She success-

fully completed the first flight without any difficulty and crossed the first landing to the second flight. As she descended from the first step to the second, she said, her left foot slipped and, in the words of an interpreter, the "left leg went to the right, the right, all the way to the right, and turned her kind of inside out, and she was holding on to the right railing. She wanted to grab something on the left, but there wasn't anything." When asked where Eugenia ended up when she completed her fall, the reply was, "On the bottom, on the very bottom where the office was." Once Eugenia regained her composure, she retraced her route and later reported that she observed some wet spots on the "same stairs" on which she had slipped.

■ On appeal Eugenia argues that the trial justice erred in granting the church's motion for a directed verdict and in excluding evidence from her expert witness concerning the 1965 Building Officials and Code Administrators (BOCA) Code.

In responding to the church's motion for a directed verdict, Eugenia's counsel acknowledged that, on the evidence, the church could not be charged with notice, constructive or actual, of the wet spots on the stairs. However, it was his contention that the use of terrazzo on the stairs without a protective, nonslip abrasive in the mix and the absence of a second handrail were hazardous conditions violative of the BOCA Code.[1] The trial justice granted the church's motion, ruling that Eugenia had failed to prove that the stairs were negligently constructed due to the use of terrazzo stair treads. He further stated: "The evidence in this case does not indicate that there was a violation of any code in the construction of this stairway, and as a matter of fact, I can decide as a matter of law

1. This court previously referred to the BOCA Code in *Blackstone Park Improvement Association v. State Board of Standards and Appeals,* R.I., 448 A.2d 1233, 1235 (1982), where it was noted that the General Assembly first enacted a statewide building code at its January 1973 session, and that subsequently the Legislature, at its January 1981 session, "adopted, with some modifications, the provisions of the 1978 BOCA Basic Building Code, drafted by the Building Officials & Code Administrators International, Inc."

that there was no negligence in constructing this type of stairway."

Our task in reviewing the trial justice's decision in favor of the church is to view the evidence in the light most favorable to Eugenia and determine if there remain any issues upon which reasonable persons could draw conflicting conclusions. *Knudsen v. Hall*, R.I., 490 A.2d 976 (1985); *Powers v. Carvalho*, 117 R.I. 519, 368 A.2d 1242 (1977). With this standard in mind, we conclude that the record fully supports the decision of the trial justice, and consequently, the motion for a directed verdict was properly granted.

 Eugenia's ultimate success at trial depended upon an expert witness. Eugenia's counsel, in attempting to fault the church for the terrazzo treads and the absence of an inner handrail, presented as a witness an engineer who had some expertise in the designing of stairwells. In attempting to qualify the witness concerning the standards prevalent at the time the church was built in the mid-1960s, counsel asked the expert whether the BOCA Code at any time prior to May 9, 1976, contained any provisions pertaining to the use or nonuse of terrazzo in any particular areas. The witness replied, "I don't know if I can answer that with a yes or no because the BOCA Code does not call out any one special material which is considered an architectural material." Later, the witness was asked if he had any familiarity with whether or not, within the meaning of the BOCA Code, terrazzo was considered to be a nonslip surface. The church's objection to the question was sustained, and the trial justice pointed out that if the witness wished to discuss the BOCA Code, he must produce the BOCA Code as it existed at the time in question. The witness subsequently conceded that in 1965 he was not involved in the construction industry. Later, when the witness was asked if, as a result of his inspection of the church premises in 1982, and having in mind that the staircase had not been altered since it was built in 1965, he had an opinion regarding whether the staircase was unreasonably dangerous. The church's objection to this question was also sustained, with the trial justice emphasizing an absence of any evidence indicating that the witness was familiar with the construction standards in Rhode Island in 1965 "concerning stairways or flooring, or anything else for that matter." The witness was excused.

The determination of the competency of an expert witness is a matter that rests within the sound discretion of the trial justice, and this discretion will not be disturbed absent a showing of an abuse thereof, and here we see no such abuse. *Lacey v. Edgewood Home Builders, Inc.*, R.I., 446 A.2d 1017, 1019 (1982).

The plaintiff's appeal is denied and dismissed, and the judgment appealed from is affirmed.