Fernandinho P. GOMES

v.

MOSSBERG INDUSTRIES, INC.

No. 98–580–Appeal.

Supreme Court of Rhode Island.

Dec. 11, 2000.

Stephen M. Isherwood, Kenneth A. Schreiber, Cranston, for Plaintiff.

Thomas C. Angelone, for Defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

In this case, Fernandinho P. Gomes appeals following the entry of judgment as a matter of law against him on his product liability personal injury claim for damages against Mossberg Industries, Inc. The parties were directed by order of a prebriefing justice of this Court to appear and show cause why the issues raised in the appeal should not be summarily decided. After consideration of counsels' memoranda and arguments, we conclude that cause has not been shown and we will proceed to summarily decide the appeal. For the reasons hereinafter set out, we deny and dismiss his appeal.

### I

### Case Facts and Travel

On January 23, 1992, Fernandinho P. Gomes (Gomes) was an employee of Hope Webbing, Inc. (Hope Webbing), a local textile plant specializing in the manufacture of close-thread braiding products, such as shoelaces. On that day, while mopping a water spill adjacent to a motorized drive shaft that powered a series of close thread-braiding machines, his left arm became

entangled in the fast-revolving drive shaft, resulting in the loss of his left arm below the elbow and injury to his right hand and three fingers on that hand.

In August 1994, Gomes sued Mossberg Industries, Inc. (Mossberg), alleging in his complaint that it had designed, manufactured and sold the allegedly defective and dangerous drive shaft to Hope Webbing. He alleged that Mossberg had "introduced" or "furnished" to Hope Webbing a drive shaft that it knew or should have known was negligently designed, defective, and inherently dangerous, and for which it was strictly liable for having caused his injuries and damages. He sought both compensatory and punitive damages.

About four years later, in October 1998, Gomes filed an amended complaint, claiming essentially the same causes of action and damages, but asserting now that the allegedly inherently dangerous drive shaft had been designed, manufactured and sold to Hope Webbing by New England Butt Company, and that Mossberg was liable to him as the "successor-in-interest" to New England Butt Company.

At his Superior Court jury trial in October 1998, Gomes, through his witnesses, some of whom testified in person and others by deposition, sought to establish Mossberg's liability to him for his injuries. Gomes himself neither attended nor appeared at the trial and was purportedly out of the country. Unfortunately for his cause, however, the testimony of several of the key witnesses called by Gomes's attorney to establish Mossberg's liability were unable to do so. For example, the deposition testimony of Peter Heaney, a former plant manager at Hope Webbing, disclosed that Hope Webbing had never purchased the drive shaft in question or the shaft hangers supporting it from New England Butt Company. Heaney's deposition testimony was that "[t]he only thing Hope Webbing bought off New England Butt

were 20 braiding machines in the year-in the 1970's, I believe '72, '73." [1] Heaney also testified that the motor powering the drive shaft had not been purchased from New England Butt Company, but had been purchased either from Jet Electric or from other companies that were in the process of going out of business. He further testified that the drive shaft in question had been set up to power the braiding machines by Hope Webbing's own millwright, Joseph St. Dennis.

The deposition testimony of another plaintiff's witness, Louis R. Perrotta, who had been employed as an engineer at New England Butt Company since 1946 and who had retired in June 1984, was read to the trial jury. In it, Perrotta testified unequivocally that the particular drive shaft that caused Gomes's injury had never been "manufactured or distributed" by New England Butt Company. When shown a photograph of the drive shaft in question, he positively noted that its diameter measure was not that of any ever manufactured by New England Butt Company and also that the drive shaft depicted in the photo exhibit, as well as its "bearing stand," lacked the New England Butt patent mark that was always affixed to its products.

The final trial witness called by Gomes was George J. Geisser III (Geisser), a civil engineer. Geisser was called and expected to give expert opinion testimony concerning the alleged negligent design and manufacture of the motorized drive shaft and its layout at Hope Webbing with relation to the close-thread braiding machines that it powered. Geisser's qualifications as an expert capable of proffering his expected opinions to the trial judge and jury concerning the design and safety of the drive shaft was challenged by counsel for Mossberg. The trial justice permitted a *voir dire* of Geisser during which Geisser testi-

---

1. At trial, Gomes's attorney conceded that the braiding machines were not the cause of Gomes's injuries.

fied about his qualifications. He testified that he was a civil engineer and admitted that his expertise in civil engineering was not related to the design or manufacturing of the machinery used by Hope Webbing to operate its braiding machines. He further admitted that he did no investigation or research to determine who had actually designed and manufactured the motorized drive shaft in question and was unfamiliar with any industry standards governing the design and manufacture of the particular drive shaft at the time of its approximate manufacture in the "1930's." *See, e.g., Pankiw v. Polish National Catholic Church of Our Savior,* 493 A.2d 819, 821 (R.I.1985). Finally, Geisser admitted that in giving his expected opinions, he would be relying solely upon information and documentation furnished to him by plaintiff's attorney, and that he never previously had testified as an expert in a motorized drive shaft design or manufacture claim case.

Upon completion of the *voir dire* hearing regarding Geisser's qualifications to proffer his anticipated opinions concerning the safety of the design and manufacture of the motorized drive shaft in question, the trial justice refused to qualify Geisser as capable of tendering that expected opinion evidence. Following that ruling, Gomes's attorney rested the plaintiff's case. The defendant, Mossberg, without presenting any evidence, promptly rested, and moved pursuant to Rule 50 of the Superior Court Rules of Civil Procedure for judgment as a matter of law in favor of Mossberg.

After what appears from the record as an exhaustive review of the plaintiff Gomes's evidence by the trial justice in a light most favorable to Gomes and likewise drawing all favorable inferences therefrom in that same light, the trial justice determined that there was nothing in the plaintiff's evidence that could support Mossberg's liability to Gomes and from which reasonable persons could draw conflicting conclusions. Accordingly, he granted Mossberg's motion for entry of judgment as a matter of law. *Martino v. Leary,* 739 A.2d 1181, 1182 (R.I.1999).

On appeal, Gomes argues that the trial justice erred in granting Mossberg's motion and in excluding evidence from his expert witness concerning the design and manufacture of the motorized drive shaft. Our task in reviewing the trial justice's ruling in favor of Mossberg is to review all of the trial evidence in the same manner as did the trial justice and to determine if, on the question of Mossberg's liability to Gomes, there was any evidence of that liability from which a reasonable jury could have drawn conflicting conclusions. *Palmisciano v. Burrillville Racing Association,* 603 A.2d 317 (R.I.1992). We have done that, and conclude none exists.

## II

### The Expert Witness

■ The qualification and competency of an expert witness to proffer opinion evidence on a subject matter over which the witness professes to possess scientific, technical or other specialized knowledge as a result of experience, training or education, and which will assist the trier of fact to better understand or to determine a relevant fact in issue, is left to the sound discretion of the trial justice. *Neri v. Nationwide Mutual Fire Insurance Co.,* 719 A.2d 1150, 1151 (R.I.1998). That discretion will not be disturbed absent a showing of an abuse thereof, and here we see no abuse.

■ Even assuming that Geisser should have been permitted to opine that the motorized drive shaft alleged to have caused Gomes's injury had been negligently designed and manufactured, that opinion evidence would have been of no assistance to Gomes because the defendant Mossberg had nothing to do with its design or manufacture, nor did Mossberg sell or deliver it to Hope Webbing. Simply put, Mossberg was the wrong defendant because it was not the tortfeasor. Gomes should have

been totally aware of that clear fact from the trial depositions that his attorneys had taken of Louis R. Perrotta and Peter Heaney and which they later presented and read to the court and trial jury.

The plaintiff's appeal is denied and dismissed and the judgment appealed from is affirmed. The papers in this case are remanded to the Superior Court.

Justice FLANDERS did not attend oral arguments, but participated on the basis of the briefs.