**Frank NERI et al.**

v.

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY.**

No. 97–309–Appeal

Supreme Court of Rhode Island.

Nov. 6, 1998.

Vincent T. Cannon, Providence, for plaintiff.

John M. Boland, Providence, for defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

Nationwide Mutual Fire Insurance Company (Nationwide or defendant) denied coverage to Frank Neri, William Neri, and Robert J. Neri (plaintiffs), for damages to an addition to the family home. The plaintiffs brought suit in the Superior Court, claiming coverage under a policy that the defendant had issued. Following a trial that resulted in a jury award for the plaintiffs, Nationwide appealed to the Supreme Court. We sustain the appeal on the bases of violations of Rule 26(b)(4)(A)(i) and Rule 33(c) of the Superior Court Rules of Civil Procedure and erroneous jury instructions. A summary of the pertinent facts follows, with additional details provided in the analysis of the issues raised by this appeal.

### Facts and Procedural History

In 1987 or 1988, plaintiff Frank Neri (Neri), owner of a construction company, served as general contractor for a three-story addition to the family home in Warwick, Rhode Island. The addition consisted of three levels: the first, a garage; the second, a gymnasium; and the third, a sun room and several decks. Neri employed an architect to design the structure and hired subcontractors to design and install support trusses. Between 1989 and 1994, Neri increased the limits for property damage coverage in his homeowner's policy, which had been issued by Nationwide. During construction, an insurance agent inspected the addition, but did not enter the structure.

Neri testified that in January of 1994, he first became aware of a crack in the ceiling of the gymnasium, the second floor of the addition. The crack widened progressively until June 1994, when part of the ceiling fell. Shortly thereafter, plaintiff filed a claim with defendant, alleging that the damage to his addition was caused by ice and snow that had accumulated during the previous winter. Neri testified that when the ceiling fell, he could see that several of the trusses supporting the third floor had cracked or completely broken. Nationwide investigated the damage and denied the claim, stating that the homeowner's policy excluded coverage for latent and design defects and thereby precluded coverage for the damage.

The plaintiffs brought suit in the Superior Court, challenging the denial of coverage. At the beginning of trial, Neri indicated that he would serve as his own expert witness on the cause of the damage. The trial justice allowed the testimony over defendant's vigorous objection. Following the denial of its motion for a new trial, Nationwide filed a timely notice of appeal with this Court, citing as error two issues that we deem compelling: (1) plaintiffs violated the provisions of Rules 26(b)(4)(A)(i) and 33(c) by failing to disclose that Neri would testify as his own expert witness on causation; and (2) the trial justice gave an erroneous instruction to the jury on latent defect.

### Expert Testimony

"It is well settled that the determination of the admissibility of expert testimony rests within the discretion of the trial justice, and this Court will not disturb a trial justice's finding on the admissibility of expert testimony *** or the justice's determinations on whether a given expert is qualified to testify on a particular subject *** absent an abuse of that discretion." *State v. Collins,* 679 A.2d 862, 867 (R.I.1996). Therefore, our review of a trial justice's admission of expert testimony is deferential.

■ Nationwide alleged that plaintiffs violated Rule 33, "Interrogatories to parties *** (c) *Continuing Duty to Answer*,"[1] by failing to disclose that Neri would be called as a causation expert and pointed to Rule 26(b)(4)(A)(i),[2] which specifically addresses

---

1. Rule 33(c) of the Superior Court Rules of Civil Procedure provides, "If the party furnishing answers to interrogatories *subsequently shall obtain* information which renders such answers incomplete or incorrect, amended answers shall be served within a reasonable time thereafter but not later than 10 days prior to the day fixed for trial. Thereafter amendments may be allowed only on motion and upon such terms as the court may direct."

2. Rule 26(b)(4)(A)(i) of the Superior Court Rules of Civil Procedure provides, in part, "A party may through interrogatories require any other

discovery of the identity of experts. Rule 26(b)(4)(A)(i) states that, through interrogatories, a party may require another party to identify each person whom it intends to call as an expert witness. The correct interpretation of this rule, in our opinion, is that the word "person" includes a person who is a party in an action and who will testify in whole or in part as an expert. The defendant in this case, through interrogatories, requested the identity of any causation experts, but, according to Nationwide's counsel, "the response was that the Plaintiff [*sic*] had no expert." On the morning of trial, before the jury was sworn, plaintiffs' counsel orally disclosed that Neri himself—a party—would testify as a causation expert regarding truss failure.

The parties disputed whether the start of trial was the first time Nationwide was informed that Neri might testify as a causation expert. The defendant's brief on appeal stated that during the February 6, 1994 pre-trial conference, plaintiffs' counsel orally identified a Mr. Chabot as plaintiffs' damage expert, and Nationwide further claimed that "plaintiff's [*sic*] counsel further represented that they had no so-called causation expert." The plaintiffs, however, alleged that at the pre-trial conference, "Nationwide was advised that *** Neri might offer his opinion as to the cause of the loss." The trial began on February 10, 1994. Therefore, although the parties disagree on when defendant was first notified that Neri, a party, would testify as an expert, it is clear that there was no definitive revelation made to defendant as required by Rule 33(c), "not later than 10 days prior to the day fixed for trial."

■ At trial, defendant asked the trial justice either to bar Neri from testifying as an expert, or to allow a voir dire outside the presence of the jury so that Nationwide could explore Neri's qualifications and the factual basis for his opinion. After hearing argument, the trial justice denied both requests. The defendant has contended that the lack of timely notice was inexcusable and prejudicial.

In our opinion, this Rule 33(c) violation was indisputably significant.

Rule 33(c) serves to prevent trial by ambush. The purpose of the rule "is to enable litigants to prepare for trial free from the elements of surprise and concealment so that judgments can rest upon the merits of the case rather than the skill and maneuvering of counsel." *Gormley v. Vartian,* 121 R.I. 770, 775, 403 A.2d 256, 259 (1979). Because plaintiffs failed to notify defendant as required by Rule 33(c), Nationwide's counsel was confronted with the surprise announcement that Neri would testify as his own causation expert. Additionally, because the trial justice denied its request for a voir dire outside the presence of the jury, defendant was forced to conduct voir dire in front of the jury, bereft of either notice or the opportunity to have prepared an informed inquiry.

Our standard of review here is whether the alleged Rule 33(c) violation prejudiced defendant, recognizing that "forbidding a party to call a witness is a drastic sanction that should be imposed only if it is apparent that the violation has or will result in prejudice to the party asserting the violation." *Gormley,* 121 R.I. at 775, 403 A.2d at 259. The plaintiffs have maintained that, even assuming a Rule 33(c) violation, Nationwide was not prejudiced because Nationwide's counsel had deposed Neri and knew that Neri believed ice and snow accumulation had caused the trusses to fail. There is quite a difference, however, between deposing a party who has made a claim for a loss and deposing an expert who is prepared to propound a theory on the cause of that loss. The cause of the damage was a critical issue in this case: if the damage resulted from a latent defect, the loss would be excluded under the insurance policy. But here defendant had neither the opportunity to depose Neri in his capacity as an expert, nor sufficient time to prepare for his cross-examination as a causation expert. Therefore, Nationwide was prejudiced by the failure of plaintiffs' counsel to give notice of

party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of

the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion."

his intention to call Neri as an expert witness on the critical issue of causation.

■ In *Margadonna v. Otis Elevator Co.*, 542 A.2d 232 (R.I.1988), this Court held that the trial justice did not err by allowing an expert to testify despite a Rule 33(c) violation. *Margadonna* is distinguishable, however, because the trial justice in that case allowed defense counsel the option to pass the case. Here, no such offer was made, and although defense counsel could have requested a continuance, it is our opinion that the burden of requesting a continuance or similar remedy should not fall on the victim of a surprise disclosure.

■ In addition, the trial justice abused his discretion in permitting Neri to testify as an expert on causation. Although Neri's experience included forty years in the construction industry, his training and education in the technical aspects of truss design were minimal. Nor was he qualified to testify on the consequences of a buildup of ice and snow on a building. In fact, Neri had retained a subcontractor who specialized in trusses to design and install the support trusses in the addition, rather than doing the work himself. Consequently, Neri was not qualified to testify on causation. The defendant's expert testified that, in his opinion, the trusses had not been designed to carry the weight of the third floor. Had the opinion rendered by Nationwide's expert been similar to Neri's opinion, the admission of Neri's testimony might have been harmless. The jury, however, was presented with conflicting testimony.

"In determining whether an error is harmless, this court considers such factors as the importance of the witness's testimony, the question of whether the testimony was cumulative, the presence or absence of corroboration or contradiction of the testimony, the extent of cross-examination otherwise permitted, and the overall strength of the case." *New England Telephone & Telegraph Co. v. Clark*, 624 A.2d 298, 303–04 (R.I.1993) (citing *State v. Ramos*, 553 A.2d 1059, 1064 (R.I. 1989)). Because the issue of causation was of paramount importance in this case, the jury was forced to choose between the opinion testimony of two witnesses, one who was a qualified expert, and one who was not an expert. Hence, the admission of Neri's opinion was not harmless, and we must conclude, therefore, that the trial justice erred in qualifying Neri as an expert and in admitting his testimony in violation of Rule 33(c).

### Jury Instructions

■ In reviewing a trial justice's charge to a jury, this Court examines the charge "as a whole in light of the meaning and interpretation that a jury composed of ordinary, intelligent lay persons would give them." *Hueston v. Narragansett Tennis Club, Inc.*, 502 A.2d 827, 829 (R.I.1986). "An erroneous charge warrants reversal only if it can be shown that the jury 'could have been misled' to the resultant prejudice of the complaining party." *Brodeur v. Desrosiers*, 505 A.2d 418, 422 (R.I.1986) (quoting *Anter v. Ambeault*, 104 R.I. 496, 501, 245 A.2d 137, 139 (1968)).

In the case before us, defendant argued that the trial justice's definition of the term "latent defect" misled the jury and prejudiced defendant's case. The insurance policy issued to Neri by Nationwide covered direct physical loss to property caused by the "weight of ice, snow or sleet," but defendant argued that a loss caused by a "latent defect" was excluded. The term "latent defect," however, was not defined in the policy, and its meaning was disputed by the parties at trial. Nationwide argued that the jury should have been allowed to consider that a faulty design could be a latent defect. The plaintiffs, on the other hand, asserted that design defects are inherently discoverable and thus cannot be excluded as latent.

■ The trial justice instructed the jury that a latent defect was an "inherent defect in the materials used in construction which could not be discovered by any known or customary test or which could not have been discovered through a reasonable and proper inspection of the property. *The term does not include faulty design or construction.*" (Emphasis added.) The trial justice based his instruction on *Mattis v. State Farm Fire & Casualty Co.*, 118 Ill.App.3d 612, 73 Ill. Dec. 907, 454 N.E.2d 1156, 1162–63 (Ill.App. 1983). Under the *Mattis* definition, a design

or construction defect could not be considered latent because such a defect theoretically would be discoverable upon inspection. Nationwide objected to the court's instruction precisely because it forbade the jury from considering that a design or construction defect could be latent.

We agree with defendant that the trial justice's instruction was incorrect, and we explicitly reject the *Mattis* definition of latent defect. This Court held in *Antonakos v. Providence Institution for Savings*, 94 R.I. 382, 181 A.2d 101 (1962), that a latent defect is one that "could not be discovered by a *reasonable* inspection," a definition clearly at odds with the one given by the trial justice. (Emphasis added.) *Id.* at 388, 181 A.2d at 104. Clearly, some design or construction defects would be discoverable upon reasonable inspection.

Because the correct definition of a latent defect is a defect that is undiscoverable upon reasonable inspection, the key issues at trial should have been: (1) whether the allegedly defective design was reasonably discoverable, and (2) if so, whether the defendant in fact performed a reasonable inspection of the premises. Because the trial justice instructed the jury in a manner that misled them into thinking they could not consider a design defect to be latent, these issues were not considered adequately at trial, and the defendant clearly was prejudiced.

Consequently, for the foregoing reasons, we sustain the defendant's appeal, vacate the judgment of the Superior Court, and remand the case to the Superior Court for a new trial.