January 14, 2026

**Supreme Court**

No. 2024-149-Appeal.
(PC 06-5973)

Louis Paolino et al.                    :

v.                    :

Joseph Ferreira et al.                    :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Louis Paolino et al.              :

v.                  :

Joseph Ferreira et al.          :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Robinson, for the Court.**  The plaintiffs, Louis Paolino and Marie Issa, appeal from an amended judgment in favor of the defendants—namely, Joseph Ferreira, the Joseph I. Ferreira Trust, J.F. Realty, LLC, and LKQ Corporation.  The plaintiffs contend on appeal that the trial justice erred "in not giving a curative instruction on various misstatements of fact" made by the defendants' counsel in his opening statement.  They further contend that the trial justice erred in allowing a particular witness for the defendants to testify relative to a certain report which she had not relied upon in forming her initial opinion.

This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and

- 1 -

after carefully reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.

For the reasons set forth in this opinion, we affirm the amended judgment of the Superior Court.

## I

## Facts and Travel

## A

## The Original Action and the First Appeal

The factual background of this case is described in our opinion in *Paolino v. Ferreira*, 153 A.3d 505 (R.I. 2017), which dealt with an earlier issue in this case. Accordingly, we shall recount here only the facts necessary for our analysis of the issues relevant to this appeal.

On November 16, 2006, plaintiffs filed their initial complaint in Superior Court. *Paolino*, 153 A.3d at 511. The complaint alleged that defendants, who own property which abuts plaintiffs' property in Cumberland, Rhode Island, and on which there was an automotive recycling facility, were responsible for environmental contamination of plaintiffs' property. *Id.* at 509, 510, 511. Several years later, in 2012,[1] an eleven-day jury trial took place, which resulted in judgment

---

[1] *See Paolino v. Ferreira*, 153 A.3d 505, 512 n.5 (R.I. 2017) ("It does not escape our notice that the complaint in this case was filed in November, 2006, but that the matter was not reached for trial until June, 2012.").

entering on behalf of plaintiffs. *See id.* at 512. On appeal by plaintiffs,[2] this Court held, *inter alia*, that the trial justice erred in precluding one of plaintiffs' expert witnesses from offering certain testimony and that plaintiffs were therefore entitled to a new trial. *Id.* at 525.

## B

## The Instant Appeal

Almost three years after the issuance of our first opinion granting plaintiffs a new trial, a second jury trial took place in January of 2020. We relate below other facts relevant to the instant appeal.

### 1. The Opening Statement and the Curative Instruction

Plaintiffs' counsel objected to certain comments made by defense counsel in his opening statement.[3] First, he objected to defendants' counsel having referred to a particular witness, Harvey Salvas, as having been a building official in the town of Cumberland in the 1950s, 1960s, 1970s, and 1980s. Counsel for plaintiffs asserted that Mr. Salvas served as the building official in Cumberland only in the 1980s and

---

[2]     *See Paolino*, 153 A.3d at 512 ("After judgment entered on behalf of plaintiffs, plaintiffs, nonetheless, timely appealed.").

[3]     The plaintiffs have failed to provide this Court with a transcript of the opening statements; rather, only a transcript of the objections made by plaintiffs' counsel as well as the trial justice's curative instruction has been provided. *See 731 Airport Associates, LP v. H & M Realty Associates, LLC ex rel. Leef*, 799 A.2d 279, 282 (R.I. 2002) ("The deliberate decision to prosecute an appeal without providing the Court with a transcript of the proceedings in the trial court is risky business.").

not in the previous decades.  Second, plaintiffs' counsel took issue with the fact that defense counsel had stated that testing was conducted in only two areas of the property, whereas plaintiffs' counsel asserted that tests were completed in six areas. Third, counsel for plaintiffs noted that defendants' counsel had stated that three federal lawsuits had been filed.  Counsel for plaintiffs then articulated the following somewhat byzantine rationale as to why he considered that statement to be false:

> "The plaintiff filed this lawsuit originally in State court, but it was removed by the defendants to Federal Court. Then that case was dismissed out of Federal Court and remanded to State court, and the plaintiff then filed a lawsuit under the Clean Water Act in Federal Court, which he voluntarily dismissed because it was improperly noticed to the parties, and then re-filed it. And those are the only two lawsuits that were filed, not three lawsuits."

Fourth, counsel for plaintiffs asserted that, although it was agreed during a chambers conference prior to trial that the previous procedural history of this case would not be mentioned, defense counsel had implied that plaintiffs had been the cause of a thirteen-year delay in the case.[4]

After plaintiffs' counsel had articulated those several objections, the trial justice instructed the jury as follows:

> "You heard the opening statements of the attorneys yesterday.  As I indicated, that is one of the two times that they'll have an opportunity to speak to you; they'll have that chance again at the end of the case.  I do want to caution you with respect to, any time anyone speaks about

---

[4]      It will be recalled that this case was initially filed on November 16, 2006.

the evidence in the case, their version of what the evidence is, is not the evidence. The evidence is what you hear from the witness stand and what you find to be true. They will comment on the evidence in the opening, and do so again in the closing, that may be inconsistent with each other and also inconsistent with your memory of the evidence, and again, it's your memory that controls. What they say the evidence is, is not the evidence.

"Also, there was some reference to other cases, federal cases, that is not before you. The only thing that is before you is the case that we are starting right now, starting to hear evidence on. So any reference to any other type of case, a federal case or anything else, is not before you and you should not consider that and put that out of your mind.

"Also, you heard reference that this case is an older case, and there is no question that it is. Why it is and who was responsible for that is not before you. Nobody, as usual, is responsible for a delay of the case. Cases are delayed for many, many reasons. And again, the reason, whether it is delayed and the reasons for the delay, again, is nothing for you to consider and you should not consider that at all. Again, all you've got to do is consider the evidence that you're going to hear in this courtroom and make decisions after I give you those instructions. That's enough for you to do. You can put everything else out of your mind and not consider other references."

No objection to this instruction was made by either party.

## 2. The Testimony of Karen Beck

The plaintiffs next objected to some aspects of the testimony of Karen Beck, who testified at trial as a witness on behalf of defendants. In the course of her testimony on direct examination, Ms. Beck's attention was directed to the fact that,

when plaintiffs' environmental expert, Gary Garfield, testified in this case, he reviewed a report generated by Robert Roseen.[5] Ms. Beck was asked whether she was familiar with the "computer model" that Mr. Roseen[6] had utilized in his report. At that point, plaintiffs' counsel objected, stating that "[t]here was an expert report, [and] none of this was included in the expert report." Defendants' counsel responded that the questioning served as "rebuttal to what Mr. Garfield testified about two days ago."

When the trial justice inquired whether Ms. Beck's report had considered Mr. Roseen's report, defense counsel acknowledged that Ms. Beck's report was completed before Mr. Roseen's had been created. The trial justice ruled that she would not permit Ms. Beck to testify as to Mr. Roseen's report because her report had been created before that of Mr. Roseen. Defense counsel informed the trial justice that Ms. Beck had "already testified about this report in the Federal Court trial." Defense counsel emphasized that Ms. Beck's testimony relative to Mr. Roseen's report "was part of the opinion that she offered at the Federal Court." He further noted that there had been reliance on portions of Mr. Roseen's report at the

---

[5]     There is a discrepancy in the record as to the spelling of Mr. Roseen's name. Throughout this opinion, we will use the spelling that appears in the parties' filings with this Court.

[6]     The record indicates that Mr. Roseen is an engineer who is with the firm called Geosyntec.

federal court trial as well, which Ms. Beck attended. After reviewing portions of the transcript from the federal court trial, the trial justice ruled that Ms. Beck would be allowed to testify only "as to whether [Ms. Beck] agrees with that portion of [the Roseen report] or not." After so stating, the trial justice ruled that plaintiffs' objection was "overruled in part and sustained in part."

### 3. The Subsequent Travel of the Instant Case

The jury ultimately found for defendants, except that it awarded plaintiffs $10,000 in punitive damages against one of the defendants. The defendants subsequently filed a motion to amend the final judgment pursuant to Rule 59(e) of the Superior Court Rules of Civil Procedure. Eventually, an amended judgment was entered on June 30, 2021 for defendants on all counts with no punitive damages.

The plaintiffs filed a timely notice of appeal on July 12, 2021. They had already timely requested the transcripts on July 9, 2021, which were thereafter filed with the clerk's office. Approximately three years later, on April 26, 2024, defendants filed in the Superior Court a motion to dismiss plaintiffs' appeal "based on Plaintiffs' failure over the past 34 months * * * to comply with Rule 11(a) * * *." (Emphasis omitted.) The plaintiffs objected to that motion to dismiss, asserting that they had complied with the requirements of Article I, Rule 10(b) of the Supreme Court Rules of Appellate Procedure and that they "had taken all the necessary actions

to enable the Superior Court clerk's office to assemble and transmit the record" to this Court.

The plaintiffs posited that the clerk's office had failed to transmit the record in spite of plaintiffs' "repeated attempts" to contact that office to request that the record be transmitted. To support their assertion that the Superior Court was in possession of all necessary exhibits required for transmission by the clerk's office, plaintiffs in their objection to the motion to dismiss pointed to a 2022 complaint filed by plaintiff Louis Paolino with the Rhode Island State Police. In that complaint, Mr. Paolino alleged that there were exhibits from the first trial that were missing and not available to the parties prior to the commencement of the second trial. The plaintiffs emphasized that the police report relative to Mr. Paolino's complaint indicated that the Superior Court Administrator advised the State Police that the Superior Court had all the exhibits that were presented at trial.

On May 23, 2024, a hearing was held in the Superior Court on defendants' motion to dismiss.[7] In a separate filing with this Court, defendants subsequently represented the following: "At the May 23, 2024 Superior Court hearing on Defendants' initial motion to dismiss the appeal, the Superior Court justice stated that, because the record had been certified to this Court the day before, the Superior

---

[7] No transcript of that hearing was provided to this Court.

Court no longer had jurisdiction, and he denied the motion on that basis."[8] On June 5, 2024, defendants filed with this Court a motion to dismiss plaintiffs' appeal. The plaintiffs filed an objection to that motion on June 17, 2024. In an order that was entered on September 6, 2024, this Court denied defendants' motion without prejudice and with the proviso that the parties "may also address these issues in any additional filings they may be permitted or required to make following the prebriefing conference."

## II

## Issues on Appeal

On appeal, plaintiffs contend that the trial justice erred in failing to provide a curative instruction that addressed what they considered to be false statements made by defendants' counsel during his opening statement. The plaintiffs additionally argue that the trial justice abused her discretion in allowing Ms. Beck to testify relative to the Roseen report because defendants did not update their answers to interrogatories so as to indicate that defendants' witness had relied on that report to formulate an opinion.

---

[8] The certification of the record in this case to this Court appears to have caused a certain degree of confusion for the parties and for the hearing justice in the Superior Court. The case was initially certified to this Court on May 22, 2024, the day prior to the hearing on defendants' motion to dismiss in Superior Court. However, the record was certified again to this Court on May 30, 2024, with a notation that reads "Revised transmittal form listing appeal transcripts." This Court's docket indicates that the case was docketed here on May 30, 2024.

The defendants, for their part, argue that plaintiffs' appeal should be dismissed pursuant to Article I, Rule 11(a) of the Supreme Court Rules of Appellate Procedure because plaintiffs "waited nearly three years after entry of final judgment to perfect their appeal." We shall first address defendants' contentions relative to the motion to dismiss plaintiffs' appeal before turning to the merits of that appeal.

### III

### Discussion

### A

### Dismissal of Plaintiffs' Appeal

As previously stated, defendants' motion to dismiss plaintiffs' appeal filed with this Court was denied without prejudice to the possibility of the issue being addressed in future filings with this Court. The defendants have done so, arguing in their counterstatement filed pursuant to Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure that dismissal of plaintiffs' appeal is appropriate pursuant to Rule 11(a). Specifically, defendants assert that plaintiffs violated Rule 11(a) by failing to transmit the record for almost three years, and they contend that plaintiffs are unable to show that the delay was due to excusable neglect. It is defendants' position that transmission of the record was the responsibility of plaintiffs, not the clerk's office. They further note that, based on the 2022 State

Police report, plaintiffs were aware that the record was available for transmission but still failed to act.

For their part, plaintiffs argue that, as of November 29, 2021, when the transcripts were filed in Superior Court, they had complied with the requirements of Rule 10(b), thereby enabling the clerk's office to assemble and transmit the record to this Court. As support for that position, plaintiffs point to the statement in the 2022 State Police report that the Superior Court was in possession of all exhibits from trial. They further emphasize that the language of Rule 11(b) (as they paraphrase the Rule) provides that the clerk's office "*shall* transmit [the record] to the clerk of the Rhode Island Supreme Court." The plaintiffs additionally represent that, between 2022 and 2024, they had contacted the clerk's office "both by telephone and in person inquiring as to when the record would be transmitted to the Supreme Court."

Rule 10(b)(1) provides that "within twenty (20) days after filing the notice of appeal," the appellant must order such transcripts of the proceedings "as the appellant deems necessary for inclusion in the record."

Rule 11(a) provides in pertinent part:

> "Except as provided for in Rule 35(e) with respect to cases eligible for mediation, the record on appeal, including the transcript necessary for the determination of the appeal, shall be transmitted to the Supreme Court within sixty (60) days after the filing of the notice of appeal unless the time is shortened or extended by an order entered under

- 11 -

subsection (c) of this rule. Promptly after filing the notice of appeal the appellant shall comply with the provisions of Rule 10(b) or (c) and shall take any other action necessary to enable the clerk to assemble and transmit the record."

Rule 11(b) states:

"When the record is complete for purposes of the appeal, the clerk of the trial court shall transmit it to the Clerk of the Supreme Court. * * * Transmission of the record is effected when the clerk of the trial court forwards the record to the Supreme Court."

Upon reviewing the record in this case, we decline to dismiss plaintiffs' appeal based on the untimeliness of the transmission of the record. We begin by noting that we are aware that this Court has previously, in a *per curiam* opinion wherein the principal issue was the appellant's failure to have ordered transcripts, stated that "[t]he appellant, not the clerk, is responsible for the timely transmission of the record and the transcript under our rules." *Small Business Loan Fund Corporation v. Gallant*, 795 A.2d 531, 533 (R.I. 2002). However, we are of the opinion that the instant case presents a different situation in that plaintiffs' reliance on the clear language of Rule 11(b)—"[w]hen the record is complete for purposes of the appeal, the clerk of the trial court shall transmit it to the Clerk of the Supreme Court"—is certainly not baseless.

The cases cited by defendants (as well as other cases that we have reviewed) fail to convince us that plaintiffs' appeal should be dismissed on procedural grounds. In particular, the cases of *In re Kyla C.*, 79 A.3d 846, 848 (R.I. 2013) (mem.), *Pelosi*

*v. Pelosi*, 50 A.3d 795, 799 (R.I. 2012), *Sentas v. Sentas*, 911 A.2d 266, 270 (R.I. 2006), *Stepp v. Stepp*, 898 A.2d 724, 725 (R.I. 2006) (mem.), *Small Business Loan Fund Corporation v. Gallant*, 795 A.2d 531, 533 (R.I. 2002), *Daniel v. Cross*, 749 A.2d 6, 10 (R.I. 2000), and *Procopio v. PRM Concrete Corporation*, 711 A.2d 650, 651 (R.I. 1998) (mem.), all deal (in varying degrees) with the failure to order transcripts in a timely manner and not with a situation where the completed record was not transmitted to this Court. Significantly, there was no such failure about ordering transcripts in a timely manner in the instant case.

As we have previously indicated, plaintiffs in the instant action timely filed a notice of appeal and (importantly) timely ordered the transcripts, which were filed in the Superior Court on November 29, 2021. Unlike what transpired in the above-cited cases, plaintiffs in the instant case complied with the rules.

The plaintiffs also indicate that, according to the 2022 State Police report, the appeal record was complete; and they assert that it was incumbent upon the clerk's office to comply with Rule 11(b) by transmitting the record to this Court. The plaintiffs further represent that they had contacted the clerk's office multiple times to request that the record be transmitted.[9] The plaintiffs have satisfied this Court

---

[9] The defendants point out that plaintiffs have "failed to specify how many times they called or to provide any evidence to support this excuse." While that observation is accurate, this Court has no reason to believe that plaintiffs are disingenuous in their assertion relative to their contacts with the clerk's office.

that this was not a situation in which they were attempting to abandon their appeal. *See Armstrong v. Armstrong*, 115 R.I. 144, 148, 341 A.2d 37, 40 (1975) ("The purpose of permitting an appellee to dismiss an appeal for failure to transmit the record is to provide a method to settle abandoned appeals and to expedite the orderly finalization of disputes by decisions of this court."). In our view, it would be unfair in this instance to dismiss plaintiffs' appeal when the record lay completed in the clerk's office and plaintiffs did make efforts to see to it that the mandate of Rule 11(b) was complied with.[10] In so ruling, we are confident that we have arrived at a just result. *See Wilkinson v. Harrington*, 104 R.I. 224, 230, 243 A.2d 745, 749 (1968) (stating that "the attainment of justice * * *, after all, is the true purpose of a court's existence").

Accordingly, because we decline to dismiss plaintiffs' appeal based on the untimeliness of the transmission of the record, we shall proceed to address the substantive issues on appeal.

---

[10] In view of our language in *Small Business Loan Fund Corporation v. Gallant*, 795 A.2d 531 (R.I. 2002), practitioners should be cautious about relying exclusively on the language of Article I, Rule 11(a) of the Supreme Court Rules of Appellate Procedure. *See Small Business Loan Fund Corporation*, 795 A.2d at 533. Moreover, if practitioners are in a position in which they find it necessary to contact the clerk's office to assure the timely transmission of the record in a case, it would be advisable that they contact the clerk's office in writing and keep a record of such communications.

# B

## Defense Counsel's Opening Statement and the Curative Instruction

The plaintiffs first argue that the trial justice erred in not providing a curative instruction that adequately addressed what they contend were false statements made by defendants' counsel in his opening statement. The plaintiffs assert that the following statements made by defense counsel were false: (1) the assertion that plaintiffs filed three (rather than two) federal court lawsuits, all of which had been dismissed; (2) the representation that a particular witness for defendants had been a building official in Cumberland for approximately thirty years (rather than for a shorter time); (3) the assertion that only one expert retained by plaintiffs "had actually taken any samples for testing on the Paolino property" and that only two water samples and two soil samples were taken by said expert; and (4) the implication that the "delay from 2006 * * * until 2020 when the present case was [first] tried before the Superior Court was due to various complaints Mr. Paolino had made over [fifteen] years against the Appellees in this matter."

The defendants contend that the alleged misstatements had no bearing on the merits of the case. They further argue that the trial justice's curative instruction "eliminated any potential prejudice."

When conducting a review of a trial justice's charge to a jury, "this Court examines the charge as a whole in light of the meaning and interpretation that a jury

- 15 -

composed of ordinary, intelligent lay persons would give them." *Neri v. Nationwide Mutual Fire Insurance Company*, 719 A.2d 1150, 1153 (R.I. 1998) (internal quotation marks omitted). A charge that is erroneous or inadequate will merit reversal only "if it can be shown that the jury could have been misled to the resultant prejudice of the complaining party." *Brodeur v. Desrosiers*, 505 A.2d 418, 422 (R.I. 1986) (internal quotation marks omitted).[11]

This Court has stated that "[n]ot all potentially prejudicial statements made during trial require the trial justice to declare a mistrial." *State v. Lassiter*, 836 A.2d 1096, 1102 (R.I. 2003). To that end, "[i]f the prejudice was curable, the trial justice [i]s obliged to issue a timely and effective instruction to the jury." *Id.* This Court has articulated the following three-step analysis in determining whether a new trial is warranted due to one or more statements made by counsel: "(1) whether counsel's comments were improper and an attempt to appeal solely to the prejudice and passion in the minds of the jurors; (2) whether the jury was influenced by the improper remarks; and (3) whether, if the jury was so influenced, the improper references were dissipated by a curative instruction." *Baker v. Women & Infants Hospital of Rhode Island*, 268 A.3d 1165, 1169 (R.I. 2022) (internal quotation marks and brackets omitted).

---

[11] It is our view that these principles relative to a charge to a jury are also applicable, *mutatis mutandis*, to curative instructions.

Significantly, however, this Court has made clear that the raise or waive rule precludes a litigant from arguing an issue on appeal that has not been articulated at trial. *See Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174, 184-85 (R.I. 2008) ("Pursuant to our well-established raise-or-waive rule, this Court will not address arguments raised on appeal that were not presented to the trial justice for review.") (footnote omitted); *Pollard v. Acer Group*, 870 A.2d 429, 432 (R.I. 2005).

In the instant case, plaintiffs failed to challenge the sufficiency of the curative instruction that they now claim was deficient. The trial justice provided a lengthy instruction, addressing specifically the comments relative to other federal lawsuits as well as the delay in the case coming to trial. But plaintiffs opted not to object to that curative instruction at any point—nor did they move to pass the case. Accordingly, it is clear to us that plaintiffs failed to preserve their objections to the curative instruction. *See State v. Clements*, 83 A.3d 553, 564 (R.I. 2014) (holding that the defendant "failed to preserve his objections to the content of the limiting instructions given to the jury," thereby waiving the right to appellate review).

C

**Alleged Violation of Rule 33(c) of the Superior Court Rules of Civil Procedure**

The plaintiffs' final argument is that the trial justice erred by allowing defendants' witness, Karen Beck, "to testify that she disagreed with the opinions contained in Mr. Roseen's report." The plaintiffs elaborate that, in their answers to

- 17 -

interrogatories, defendants did not list the Roseen report as something that Ms. Beck had reviewed in forming her opinion and that the Roseen report only became available after Ms. Beck's report had been completed. Specifically, plaintiffs contend that defendants "failed to update their discovery to indicate that Karen Beck reviewed Robert Roseen's report and that she would be testifying" as to Mr. Roseen's findings.

The defendants counter by arguing that they disclosed Ms. Beck as an expert witness approximately one year before the start of the second trial and stated that her testimony would be consistent with the testimony that had been presented by her at a prior trial. The defendants point to Ms. Beck's testimony in an earlier federal case (at both her deposition and at trial) which testimony, defendants assert, "specifically addressed the same issues with the Roseen report that she testified to" during the trial of the instant case.

It is well settled that "the determination of the admissibility of expert testimony rests within the discretion of the trial justice, and this Court will not disturb a trial justice's finding on the admissibility of expert testimony, * * * or the justice's determinations on whether a given expert is qualified to testify on a particular subject, * * * absent an abuse of that discretion." *State v. Collins*, 679 A.2d 862, 867 (R.I. 1996); *see Neri*, 719 A.2d at 1151.

Rule 33(c) of the Superior Court Rules of Civil Procedure provides:

"If the party furnishing answers to interrogatories shall subsequently obtain information which renders such answers incomplete or incorrect, amended answers shall be served within a reasonable time thereafter but not later than thirty (30) days prior to the day fixed for trial. Thereafter amendments may be allowed only on motion and upon such terms as the court may direct."

We have explained that the purpose of Rule 33(c) is "to enable litigants to prepare for trial free from the elements of surprise and concealment so that judgments can rest upon the merits of the case rather than the skill and maneuvering of counsel." *Id.* (quoting *Gormley v. Vartian*, 121 R.I. 770, 775, 403 A.2d 256, 259 (1979)). We have stated that, in conducting our review in this regard, we look to see whether an alleged Rule 33(c) violation prejudiced the complaining party. *See id.*

After carefully reviewing the record in this case, it is our opinion that the trial justice narrowly tailored her ruling relative to Ms. Beck's testimony so as to avoid any prejudicial effect or surprise to the plaintiffs. As has been noted, Rule 33(c) "serves to prevent trial by ambush," *Neri*, 719 A.2d at 1152; and we perceive no ambush by the defendants in this case or any other meaningful violation of Rule 33(c). We are particularly impressed by the fact that the trial justice was satisfied that Ms. Beck's testimony would be similar to the testimony that she had provided in a previous federal court trial—a fact that the plaintiffs do not dispute. The trial justice took into consideration that Ms. Beck was present at the federal court trial at which there was testimony relative to Mr. Roseen's report, and the trial justice

- 19 -

limited the testimony of Ms. Beck to the specific portions of the report as to which Mr. Garfield had testified. We perceive no reason to disturb that thoughtful and meticulous ruling. Accordingly, we detect no abuse of discretion by the trial justice in allowing the limited testimony of Ms. Beck relative to the Roseen report.

## V

## Conclusion

For the reasons set forth in this opinion, we affirm the amended judgment of the Superior Court.[12] The record may be returned to that tribunal.

---

[12] *See Arena v. City of Providence*, 919 A.2d 379, 396 (R.I. 2007) ("It is time for this litigation to end."); *Northern Trust Co. v. Zoning Board of Review of Town of Westerly*, 899 A.2d 517, 520 (R.I. 2006) (mem.) ("We are more than persuaded that the instant plaintiffs have had their day in court—and then some. The time has come for this litigation to end.").