STATE

v.

Richard L. BRIGHAM, Jr.

No. 92–489–C.A.

Supreme Court of Rhode Island.

March 16, 1994.

Jeffrey Pine, Atty. Gen., Aaron Weisman, Chief, Appellate Div., Lauren Sandler Zurier (argued case), Providence, for plaintiff.

Richard Casparian, Public Defender, Catherine Gibran, Barbara Hurst, Asst. Public Defenders, for defendant.

## OPINION

LEDERBERG, Justice.

Richard L. Brigham, Jr. (defendant) appealed to the Supreme Court from a judgment of conviction on two counts of first-degree sexual assault. The defendant was sentenced to thirty years on each count, to be served concurrently. On direct appeal the defendant challenged the admission of the testimony of the victim's sister under Rule 404(b) of the Rhode Island Rules of Evidence and also contested the legality of the sentence imposed. We affirm the conviction. A brief recitation of the pertinent facts follows.

Ann Ames,[1] aged twenty-one at the time of trial, testified that she had endured sexual assaults by defendant, her stepfather, for approximately six years from the time she was ten or eleven years old until 1986, when she was sixteen years old. In 1986 Ann's mother learned about the assaults, and confronted her husband with the allegations. The defendant admitted the offenses. The three family members had a meeting at which Ann agreed to work things out rather than subject her mother to a divorce. According to Ann's testimony, at this 1986 meeting defendant apologized to her and assured her that he would never assault her again and did not. After staying with a friend for about a week, she moved back with her mother and stepfather in the hope that she could achieve a normal life. Ann did not report the abuse in 1986, but did so in No-vember 1989 in a report to the Smithfield police.

After investigation, defendant was indicted on March 2, 1990, on five counts relating to the sexual assault of his two stepdaughters, Ann and Betty Ames.[2] After trial commenced, the trial justice entered judgment of acquittal on two counts relating to defendant's conduct towards Betty and the Attorney General of the State of Rhode Island (state) dismissed the charge alleging abominable and detestable crimes against nature upon Ann. At the conclusion of all the evidence the jury returned a guilty verdict on the remaining two counts relating to first-degree sexual assault upon Ann. After a two-day sentencing hearing, the trial justice sentenced defendant to thirty years on each count of first-degree sexual assault, the terms to be served concurrently. The defendant filed a timely appeal, raising two issues.

The defendant challenged the admission of Betty Ames's testimony into evidence. During trial, the state conceded that charges against defendant for his abuse of Betty were barred by the statute of limitations. Nevertheless, at trial Betty testified to a three-year history of sexual abuse similar to that experienced by her older sister, Ann. According to defendant, Betty's testimony concerning defendant's sexual abuse of her was inadmissible under Rule 404(b) because the testimony amounted to evidence of prior misconduct or "other bad acts." The trial justice, however, admitted Betty's testimony under Rule 404(b), determining that her testimony was "reasonably necessary" to establish the elements of the state's *prima facie* case against defendant. We agree.

As a general rule, in the prosecution of a specific crime, evidence of past, unconnected, uncharged criminal behavior is not admissible to prove a defendant's propensity to commit the crime charged. *State v. Woodson*, 551 A.2d 1187, 1193 (R.I.1988). The basis for excluding such evidence of "other crimes" is the belief that " 'the potential for creating prejudice in the minds of the jurors outweighs its probative value.' " *State*

---

1. This is a fictitious name.

2. This is a fictitious name.

v. *Brown*, 626 A.2d 228, 233 (R.I.1993). However, the probative value has been found to outweigh the prejudicial effect when the evidence of other bad acts is introduced to establish " 'guilty knowledge, intent, motive, design, plan, scheme, system, or the like.' " *State v. Tobin*, 602 A.2d 528, 531 (R.I.1992).

■ In *State v. Jalette*, 119 R.I. 614, 382 A.2d 526 (1978), this court considered the use of evidence of "other crimes" in cases involving sexual offenses. In *Jalette* we held for the first time that evidence of other, not too remote, sexual offenses committed against the victim of the crime charged or with persons other than the victim may be admitted if the evidence is "reasonably necessary" and not merely cumulative. *Id.* at 627, 382 A.2d at 533. *Accord State v. Messa*, 542 A.2d 1071 (R.I.1988). Subsequently, in *State v. Pignolet*, 465 A.2d 176 (R.I.1983), we were confronted for the first time with the admission of evidence of a defendant's similar sexual conduct with young children living in the same household where such similar sexual conduct was not named in the indictment. In *Pignolet* we held that evidence of such sexual conduct is admissible under Rule 404(b) if the trial court finds the uncharged conduct is "closely related in time, place, age, family relationships of the victims, and the form of the sexual acts" and is relevant, material and highly probative of the defendant's lecherous conduct toward the children over whom the defendant exercised control, supervision and discipline. *Pignolet*, 465 A.2d at 181–82. *Accord State v. Cardoza*, 465 A.2d 200, 203 (R.I.1983). Admission of this testimony, however, is not indiscriminate. As we noted in *Jalette* and *Pignolet*, in addition to establishing a close relationship between the evidence of other bad acts and the crime charged, the state must establish that such evidence is "reasonably necessary" for the state to meet its burden of proof.

*Pignolet*, 465 A.2d at 182; *Jalette*, 119 R.I. at 627, 382 A.2d at 533. Furthermore, the trial justice must instruct the jury as to the proper use of the offered testimony. 119 R.I. at 627–28, 382 A.2d at 533–34.

■ In the case before us, defendant did not allege that Betty's testimony was not closely related to the acts charged against defendant. The defendant also candidly admitted that the limiting instruction given by the trial justice was appropriate. The defendant alleged, however, that the state had failed to establish that Betty's testimony was "reasonably necessary" to prove a *prima facie* case against defendant.

In ruling the evidence admissible, the trial justice found the testimony probative of two outstanding issues underlying both counts of first-degree sexual-assault charges. As to count 1, the trial justice, while recognizing its limited relevance, found Betty's testimony probative of a plan or scheme by defendant to assault his stepdaughters prior to their thirteenth birthdays.[3] More importantly, the trial justice found Betty's testimony highly relevant in regard to count 2 and the issue of psychological coercion.

According to defendant, it was erroneous for the trial justice to admit this testimony because, unlike the "run-of-the-mill child molestation case" where the testimony may be reasonably necessary, it was not necessary in the instant case in which defendant actually admitted that sexual acts took place. In addition, defendant attacked the trial justice's determination that the testimony was highly relevant on the issue of psychological coercion. According to defendant, Ann's own testimony regarding an escalating course of sexual conduct spanning several years was sufficient to prove psychological coercion. Thus, in defendant's view, Betty's testimony was not necessary to prove the *prima facie*

---

3. Count 1 charged defendant with "sexual penetration, to wit, digital penetration, with [Ann Ames], a person under the age of thirteen * * *, in violation of [G.L.1956 (1981 Reenactment)] § 11–37–2 [as amended by P.L.1981, ch. 119, § 1]." During opening statements, defense counsel admitted to the jury that defendant had sexual contact with Ann in the form of digital penetration but denied that this contact occurred prior to Ann's thirteenth birthday.

Betty, in testimony similar to Ann's, alleged that defendant first touched her when she was ten or eleven years old. Therefore, the trial justice reasoned that Betty's testimony was probative of whether defendant assaulted Ann prior to her thirteenth birthday as alleged in count 1 of the indictment.

case but was merely cumulative. We disagree.

The defendant was charged under G.L.1956 (1981 Reenactment) § 11–37–2, as amended by P.L.1981, ch. 119, § 1, with engaging in sexual penetration with another person using "force or coercion." During opening statements, defense counsel in effect promoted a defense of consent by explicitly directing the jury to pay attention, *inter alia*, to the state's proof regarding defendant's coercion of Ann. Thus, because defendant raised the defense of consent, "it becomes part of the state's burden to negate consent in order to prove that the sexual assault was committed with force or coercion." *State v. Lamoureux*, 623 A.2d 9, 13 (R.I.1993). "In any prosecution * * * the state must establish that the defendant committed the act that constitutes the crime." *State v. Pule*, 453 A.2d 1095, 1098 (R.I.1982). Thus, "regardless of 'how conclusive the evidence on any essential element of the offense may appear, the constitutional guarantee of trial by jury precludes a court from assuming that such fact has been proved.'" *Id.*

The state's theory in the instant case was that defendant used his position as disciplinarian and head of the household to psychologically coerce Ann into the sexual acts. Betty's testimony, in addition to detailing incidents of abuse similar to that experienced by her sister, described defendant's relationship with his stepdaughters and verified defendant's position as disciplinarian and head of the household. For example, Betty testified that defendant began to assert his interest in her when she turned to him for assistance with her homework. In addition, Betty identified defendant as being primarily in charge of disciplining her and her sister as they were growing up. Betty also described how her fear of her stepfather led her to believe she had no choice but to comply with his advances. Betty's testimony therefore was highly relevant and probative of the degree of control, supervision, and discipline defendant exercised over his stepdaughters, *see Pignolet*, 465 A.2d at 181–82, but was the testimony "reasonably necessary" to prove the state's *prima facie* case? *See Tobin*, 602 A.2d at 532.

In determining whether evidence is necessary to establish the state's *prima facie* case, "the test we must apply is what appeared to be reasonably necessary to the trial justice *at the time* [the testimony is offered]." (Emphasis added.) *Pignolet*, 465 A.2d at 182. At the time the trial justice admitted Betty's testimony, the burden was on the state to prove beyond a reasonable doubt that defendant used force or coercion to commit the assaults. Beyond representations by defense counsel during a side-bar conference that defendant might not be testifying, defendant gave no indication of what evidence, if any, would be introduced to counter a claim of psychological coercion. At that point, Ann's testimony was the sole source establishing coercion, and her testimony was impeached in part by her admission that she resented defendant for marrying her mother. Betty's testimony, on the other hand, affirmed defendant's position of authority and revealed that, prior to her mother's marrying defendant, she loved defendant and thought "he was the greatest thing in the world." Given these factors, it was not erroneous for the trial justice to conclude that Betty's testimony was reasonably necessary to establish that defendant used psychological coercion in sexually assaulting Ann. Therefore, coupled with the proper limiting instruction, Betty's testimony was properly admitted under Rule 404(b). *See Pignolet*, 465 A.2d at 182.

We now turn to defendant's contention that the trial justice committed prejudicial error in imposing the thirty-year sentences. On direct appeal, defendant alleges that the sentence he received was unlawful because the trial justice considered improper criteria in imposing the sentence. In particular, according to defendant, his Fifth and Sixth Amendment rights, as well as his right to due process, were violated when the trial justice considered, *inter alia*, defendant's decision to stand trial as a factor in determining defendant's level of remorse for his crimes.

It is well settled that, in the absence of "extraordinary circumstances," this court will not consider the legality or propriety of a sentence on direct appeal. *State v.*

*Trepanier*, 600 A.2d 1311, 1315 (R.I.1991). Rather, "[t]his court has unequivocally held that the appropriate procedure * * * is to seek revision of the sentence in Superior Court pursuant to Rule 35" of the Superior Court Rules of Criminal Procedure. *State v. Baptista*, 632 A.2d 343, 345 (R.I.1993). In the instant case, the defendant did not file a Rule 35 motion, seeking correction of sentence in Superior Court. Thus, because the issue raised does not amount to an extraordinary circumstance, the absence of a determination pursuant to a Rule 35 motion precludes this court's consideration of the defendant's challenge to his sentence. The statutory 120–day period in which to seek Superior Court review of the sentence commences on the date of this opinion should the defendant choose to file such a motion. 632 A.2d at 345.

Accordingly, for the reasons stated herein, the defendant's appeal with regard to his judgment of conviction is denied and dismissed and the judgment of conviction is affirmed. The defendant's appeal from his sentence is denied without prejudice.