**STATE**

**v.**

**Mark KOEHLER.**

**No. 2000–471–C.A.**

Supreme Court of Rhode Island.

Oct. 28, 2002.

Aaron L. Weisman, Providence, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court on September 25, 2002, pursuant to an order directing the parties to appear and show cause why the issues raised by this appeal should not be summarily decided. After hearing arguments of counsel and reviewing the memoranda submitted by the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time.

In January 1999, defendant, Mark Koehler (defendant), was charged by grand jury indictment with two counts of assault with a dangerous weapon: count 1, by use of a board made of wood, and count 2, by use of his hands and fists. Following a jury trial in the Superior Court, defendant was found not guilty on both counts. However, with respect to count 2, defendant was found guilty of the lesser-included offense of simple assault and battery. The defendant subsequently was sentenced to serve one year at the Adult Correctional Institutions (ACI). Judgment of conviction entered on June 16, 2000. The defendant filed a timely notice of appeal.

The criminal charges brought against defendant arose from a dispute over a security deposit made toward the lease of an apartment owned by Celestino Antonio (Antonio). Specifically, on September 7, 1998, Antonio, a real estate investor, met with defendant to discuss a vacant apartment Antonio owned in East Providence. After defendant completed an application, he gave Antonio a $200 security deposit to hold the apartment for him. On September 11, 1998, the day that defendant was to move into the apartment, defendant called and demanded the return of his deposit. Antonio refused to return defendant's money until after the apartment was re-rented. The next day, defendant, accompanied by a friend, confronted Antonio in front of the apartment building and again demanded that his money be returned.[1] Then, on September 17, 1998, Antonio received a telephone call from a person purporting to be an East Providence police detective, requesting his assistance at one of Antonio's apartment buildings. Antonio alleged that when he arrived at the building, defendant attacked him and beat him with his hands and fists. Antonio also claimed that defendant grabbed a board[2] from the back of his flatbed truck and beat him with it. According to Antonio, after approximately ten minutes of abuse, he was left bleeding from his face.[3] During the course of the beating, defendant continually demanded money from Antonio, took his cellular phone and keys, and, while searching for cash, ripped Antonio's

---

1. According to Antonio's testimony, defendant's friend also said: "You don't know this person. You better give him his money right now."

2. The board was made of wood and was thirty-four inches long and six inches wide. However, the state's witness, Ms. Linda LaCroix, testified that she did not notice defendant using a wooden board.

3. Officer Raymond Blinn, the first police officer to arrive on the scene, described Antonio's appearance as follows: "He was covered in blood. He was bleeding from his face, his forehead had blood * * * and his shirt was bloody. The shorts that he was wearing were ripped open * * * and he had redness in the face."

pants from his body. As a result, Antonio suffered injuries to his back, legs, and head and was taken to a hospital by ambulance, where he received stitches above both his right and left eyes.[4]

The defendant, on the other hand, testified that he approached Antonio's truck to speak with him, and that Antonio attempted to run him over with the truck. The defendant stated that when he removed the keys from the ignition, he noticed a hammer in the front seat of Antonio's truck. Although Antonio did not use the hammer, defendant testified that Antonio struck him in the face four times. The defendant admitted hitting Antonio in the face, but explained that he was defending himself. At trial, defendant introduced a photograph of him taken at the ACI soon after his arrest, depicting an injury to his face.

The defendant first assigns as error the denial of his motion to dismiss count 2 of the indictment. The defendant argued that there was insufficient evidence for a grand jury to conclude that he had used his hands and fists as dangerous weapons. This Court previously has held that a defendant can be convicted of assault with a dangerous weapon by beating another with his or her hands if the hands were used in "such a manner as to be likely to produce substantial bodily harm." *State v. Zangrilli*, 440 A.2d 710, 711 (R.I.1982) (citing *State v. Mercier*, 415 A.2d 465, 467 (R.I. 1980)).

■ Before this Court, the state argued that the motion to dismiss was filed nearly seven months after defendant's arraignment and was not timely; and therefore, the hearing justice's refusal to entertain the motion may be sustained on the ground that the filing was out of time. *State v. Acquisto*, 463 A.2d 122, 128 (R.I. 1983) (holding that the trial court did not abuse its discretion in determining that a ten-month delay in filing a dismissal motion was reasonable). This argument was not raised before the hearing justice and is therefore not appropriately before this Court. *See State v. Bettencourt*, 723 A.2d 1101, 1107–08 (R.I.1999); *State v. Toole*, 640 A.2d 965, 972 (R.I.1994).

■ The state also argued that this Court has long "declined to establish a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence." *State v. Franco*, 750 A.2d 415, 419 (R.I.2000) (citing *Costello v. United States*, 350 U.S. 359, 363–64, 76 S.Ct. 406, 409, 100 L.Ed. 397, 403 (1956)). Although defendant acknowledges that this Court has consistently refused to adopt a rule that permits a defendant to challenge an indictment for lack of probable cause, *State v. Wilshire*, 509 A.2d 444, 448 (R.I.1986), defendant urges us to rule otherwise in this case. We see no reason to depart from this well settled doctrine, particularly when the defendant was acquitted of the very count about which he now complains. Accordingly, the hearing justice committed no error in refusing to dismiss the second count of the indictment. In any event, the motion was untimely.

■ The defendant also asserted that the trial court erred when it permitted the state, on cross-examination of defendant, to inquire about his criminal record, including the maximum sentences he faced for convictions for driving while intoxicated (DWI) as well as possession of cocaine and marijuana. Rule 609 of the Rhode Island Rules of Evidence allows for the

---

**4.** According to Ms. Linda LaCroix, defendant was "doing all the swearing * * * [Antonio] just kept saying 'Leave me alone. I'll get it to you.'" She also said that Antonio simply tried to block defendant's assault and never actually punched or kicked defendant.

admission of a testifying defendant's prior criminal convictions solely for the purposes of assessing credibility. The defendant argues that although questions about the convictions themselves may have been relevant, testimony about the maximum penalties for each conviction was prejudicial and irrelevant.

We note that it was defendant's own counsel who elicited, on direct examination, the fact that defendant was convicted of possession of marijuana and cocaine and received a fine for DWI charges. In *State v. Dowell,* 512 A.2d 121, 123 (R.I.1986), this Court held that an "explicit statement of the nature of the [impeaching] charge, including information about its gravity, is not forbidden." Although the better practice is to permit evidence of a criminal conviction to be introduced as bearing on a defendant's credibility, followed by an appropriate cautionary instruction, after carefully reviewing the record in this case, including the evidence of guilt introduced against defendant, we are satisfied that the error, if any, is *de minimus* and amounts to harmless error.

After the trial court finished instructing the jurors, defense counsel moved for a mistrial based upon the comments made during the prosecution's closing argument. The defendant argues that the trial justice erred when she denied defendant's motion to pass the case after the prosecutor, in her closing argument, made reference to defendant's failure to present evidence. In particular, the prosecutor commented that "Mark Koehler had a friend with him, right, on September 12th when Mr. Antonio said he came down to ask for the money, the five days before the incident. Where is this friend, right?"

The defendant argues that the trial justice should have passed the case in response to the prosecutor's questioning why defendant's friend was not produced at trial. However, during his closing argument, defense counsel stated:

"* * * Antonio tells you he was threatened and pushed around. Koehler says, 'No, I didn't even get out of the truck.' Again, do we have any witnesses? No. There's a third party there [Kevin Bullock]. Where is he? I don't know. Perhaps he could have contributed to what happened. You have Mr. Antonio's word again. Do you believe him? It's up to you."

The state argues that although this Court has held that "prosecutorial comment on a defendant's failure to call witnesses is improper," *State v. White,* 512 A.2d 1370, 1374 (R.I.1986), here, the defendant not only testified but also opened the door to this issue in such a dramatic fashion as to invite the prosecutor's response. We agree with this contention. By commenting on Bullock's absence during the trial, the defendant clearly opened the door to this comment. Thus, the argument by the prosecutor was fair. Finally, the trial justice plainly cured whatever harm arose from the prosecutor's argument by admonishing the jurors to disregard the prejudicial comment and receiving their assurance that they would do so.

For the reasons stated above, we deny and dismiss the defendant's appeal and affirm the judgment of conviction. The papers in the case are remanded to the Superior Court.